**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PATRICK R. O'REILLY,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No.   11-1454** |
| **LOUISIANA DEPARTMENT<br>OF EDUCATION, et al.,**<br>    **Defendants** | **SECTION "E"** |

### ORDER AND REASONS

Before the Court is a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants, the Louisiana Department of Education ("LDOE") and the Louisiana Board of Elementary and Secondary Education ("BESE") (together, "Defendants").[1] Plaintiff, Patrick O'Reilly ("Plaintiff"), opposes the motion.[2] For the following reasons, the motion is **GRANTED**.

### *Background*

Plaintiff, a white male, was born on February 28, 1950.[3] In August 1991, he accepted a position at George Washington Carver High School in Orleans Parish, Louisiana.[4] Following Hurricane Katrina, Plaintiff became a special education teacher at Sarah T. Reed

---

[1]  R. Doc. 38.

[2]  R. Doc. 40.

[3]  As of the date he filed his complaint in this matter, O'Reilly was 61 years old.  R. Doc. No. 1, ¶ 3.

[4]  R. Doc. No. 1, ¶ 6.

1

High School ("Reed High") in the Recovery School District ("RSD") in July 2006.[5] As of 2006, Plaintiff had approximately fifteen years experience teaching in Orleans Parish schools.[6] He also had earned two bachelor's degrees and a master's degree in education and was certified in several areas including as a supervisor of student teaching, provisional principal, provisional secondary school principal, and mild/moderate special educator.[7]

Plaintiff was appointed interim assistant principal of Reed High in October 2007.[8] He alleges that he intended to continue a career in school administration and that he made his intention known to his superiors at Reed High.[9] Shortly thereafter, however, beginning in March 2008 and continuing through July 2008, Plaintiff alleges that he was given misleading and incorrect information regarding the requirements he needed to satisfy in order to remain a school administrator.[10] Given that the person hired to fill the assistant principal position that he sought was a younger, African-American male with "substantially" less experience, Plaintiff believed that his superiors at Reed High had discriminated against him based on his age and race.[11] Consequently, he filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on August 15, 2008, alleging that he had been subjected to race discrimination under Title VII of the Civil Rights

---

[5] R. Doc. No. 1, ¶ 7.

[6] R. Doc. No. 1, ¶ 8.

[7] R. Doc. No. 1, ¶ 8.

[8] R. Doc. No. 1, ¶ 9.

[9] R. Doc. No. 1, ¶ 10.

[10] R. Doc. No. 1, ¶¶ 11-12.

[11] R. Doc. No. 1, ¶ 13.

Act of 1964 ("Title VII") and age discrimination under the Age Discrimination in Employment Act ("ADEA").[12] The EEOC issued Plaintiff a right-to-sue letter on October 29, 2009, based on the alleged discrimination at Reed High.[13] Defendants note, and Plaintiff concedes, that he did not pursue a lawsuit against defendants within ninety days of receiving his right-to-sue letter in 2009.[14]

After Plaintiff did not secure the assistant principal position at Reed High in summer 2008, he accepted a teaching position at L. E. Rabouin High School ("Rabouin High"), also in the RSD, for the 2008-2009 school year.[15] Following the 2009-2010 school year, the RSD closed Rabouin High and offered Plaintiff a position at L. B. Landry High School ("Landry High") on June 16, 2010.[16] Shortly thereafter, on September 16, 2010, Landry High principal Natalie Franklin ("Franklin") and her mentor, Shan Williams ("Williams"), summoned Plaintiff to Franklin's office.[17] Plaintiff alleges that Franklin and Williams then

---

[12]  R. Doc. No. 1, ¶ 14.

[13]  R. Doc. No. 1, ¶ 16.

[14]  R. Doc. Nos. 21-1, pp. 7-8 and 27, pp. 17 and 21. Title VII requires a plaintiff to file a lawsuit within ninety days of receiving notice from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *Duron v. Albertson's, L.L.C.*, 560 F.3d 288, 290 (5th Cir. 2009). Although the ADEA does not require a plaintiff to receive a right-to-sue letter from the EEOC, if a plaintiff does wait until the EEOC issues such notice, he must file his lawsuit within ninety days of receipt. *See* 29 U.S.C. § 626(d)-(e); *Hawkins v. Frank Gillman Pontiac*, 102 F. App'x 394, 397 (5th Cir. 2004) (per curiam) (unpublished).

[15]  R. Doc. No. 1, ¶ 15.

[16]  R. Doc. No. 1, ¶ 17.

[17]  R. Doc. No. 1, ¶ 18.

3

"falsely accused" him of "denying services to the parents of a special needs child."[18] Franklin and Williams, both of whom are allegedly "substantially younger" and are "of a different racial and/or ethnic background" than Plaintiff, "refused to allow [him] to present facts or explain the alleged incident in any way."[19]

Out of frustration, Plaintiff claims that he "spontaneously remarked" that he "'might as well resign'" if he would not be permitted to defend himself.[20] As a result of this "alleged 'verbal resignation,'"[21] Plaintiff states that he was forced to pack his belongings and was escorted from school grounds by two security guards while teachers and school staff still occupied the building.[22] Due to this purported mistreatment and the suggestion that he "should simply retire" rather than pursue any type of grievance proceeding, Plaintiff filed a second charge of race and age discrimination with the EEOC on February 8, 2011.[23] The EEOC issued Plaintiff a second right-to-sue letter on May 5, 2011.[24]

Plaintiff filed this complaint on June 20, 2011, within ninety days of receiving his second right-to-sue letter. In it he alleges that the events in March through July 2008 and

---

[18] R. Doc. No. 1, ¶ 19.

[19] R. Doc. No. 1, ¶¶ 18 and 20.

[20] R. Doc. No. 1, ¶ 20.

[21] Plaintiff alleges that he did not resign with this "off-hand mark" and repeatedly attempted to appeal the RSD's decision that he had voluntarily resigned. R. Doc. No. 1, ¶ 22. Construing the facts in the light most favorable to him, the Court will treat Plaintiff as having been fired.

[22] R. Doc. No. 1, ¶ 21.

[23] R. Doc. No. 1, ¶¶ 23 and 28.

[24] R. Doc. No. 1, ¶ 31.

4

in September 2010, give rise to numerous causes of action against defendants, including violations of 42 U.S.C. §§ 1981 and 1983, Title VII, the ADEA, the Louisiana Employment Discrimination Law ("LEDL," La. Rev. Stat. § 23:301, *et seq.*) and Louisiana education law (La. Rev. Stat. § 17:441, *et seq.*), breach of contract, deprivation of property rights without due process in violation of both the federal and Louisiana constitutions, breach of the covenant of good faith and fair dealing, abuse of right, and intentional infliction of emotional distress.

## ***STANDARD OF LAW***

### I. Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction carries the burden of proof. *Id.* The district court may base its determination as to its subject-matter jurisdiction on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.*

If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, a court should address the jurisdictional attack before reaching arguments that attack the merits of a plaintiff's claims. *Id.* "A court's dismissal of a case for lack of subject-matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing the claim in another forum." *Advocacy Ctr. for the Elderly & Disabled v. La. Dep't of Health & Hosp.*, 731 F. Supp. 2d 583, 588 (E.D. La. 2010) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

## II.     Rule 12(b)(6)

Pursuant to Fed. R. Civ. P. 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief. " *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court cannot look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009)

6

(per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## *ANALYSIS*

### I.     Sovereign Immunity

Sovereign immunity is a limit on the Court's subject-matter jurisdiction that prevents an individual from suing a state in federal court unless the state waives its immunity or Congress, acting pursuant to a post-Eleventh Amendment constitutional power, properly abrogates it.  U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp.*, 465 U.S. 89, 95 (1984); *Hans v. Louisiana*, 134 U.S. 1, 21 (1890).  The U.S. Supreme Court has held that sovereign immunity extends not only to the state itself, but also to "state agents or state instrumentalities." *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429, (1997) ("It has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").  The Fifth Circuit and other sections of this Court have held that Defendants are, as state agencies, arms of the state and entitled to sovereign immunity. *Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 399 (5th Cir. 2011) ("The State Superintendent of Education, sued in his official capacity, the [L]DOE and the BESE, argue that they are immune from the suit because they are entitled to sovereign immunity. We agree."); *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 832 (E.D. La. 2012) ("[T]he Louisiana Department of Education and the Board of Elementary and Secondary Education, are arms of the state for purposes of sovereign immunity."); *Kiper v. La. State Bd. of Elementary & Secondary Educ.*, 592 F. Supp. 1343, 1352 (M.D. La. 1984) ("The state

of Louisiana is the real party in interest in this suit against BESE."); *see Adams v. Recovery Sch. Dist.*, 463 F. App'x 297, 298–99 (5th Cir. 2012) (per curiam) (unpublished).

That would ordinarily be the end of the matter, but Plaintiff argues that "[i]n this case, and under these facts, this suit is not one against the state itself, but rather is against subdivisions of the state acting in a purely local capacity as any local school district would do," so "defendants are not entitled to Eleventh Amendment protection, just as any other local school district would not be."[25] In support, he asserts that numerous cases hold that a state agency may be immune for some purposes but not for others, depending on the particular agency function at issue.[26]

Neither party cites a case that discusses this argument as applied to LDOE and BESE, and some of Plaintiff's out-of-circuit authority does support the general principle that state agencies may be deemed local entities depending on their particular function at issue. As part of its seven-factor agency immunity test, the First Circuit does look to "the nature of the claim asserted" and ask whether it arises from the "the agency performing a governmental or proprietary function." *P.R. Ports Auth. v. M/V Manhattan Prince*, 897 F.2d 1, 10 (1st Cir. 1990); *see Royal Caribbean Corp. v. P.R. Ports Auth.*, 973 F.2d 8, 9 (1st Cir. 1992). The Eleventh Circuit does conduct its four-factor agency immunity analysis "'in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise.'" *Abusaid v. Hillsborough County Bd. of County Comm'rs*, 405 F.3d 1298, 1303 (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc)). And the Seventh Circuit has said that for purposes of sovereign

---

[25] R. Doc. No. 40, p. 3.

[26] R. Doc. No. 40, p.4, nn. 4-7.

8

immunity, "the question is whether, when the [official] acts in a particular area or on a particular issue, he acts for the State or a local entity." *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 975 (7th Cir. 2000).

The issue is far from settled, however. For example, Plaintiff fairly characterizes one of the Ninth Circuit cases he cites as supporting a particular-function approach to agency immunity. *Streit v. County of L.A.*, 236 F.3d 552, 566 (9th Cir. 2001) (asking whether a sheriff's department was "acting as an arm of the state *when administering the local county jails*" (emphasis added)). But the other Ninth Circuit case he cites instructs courts to "look at the overall function of the [agency] and not merely to the specific function it performs in relation to the" suit, at least when determining whether the agency performs a central governmental function. *Doe v. Lawrence Livermore Nat'l Lab.*, 65 F.3d 771, 774 (9th Cir. 1995), *rev'd*, 519 U.S. 425 (1997). In fact, the Supreme Court reversed *Doe*, which denied immunity to the agency, because the Ninth Circuit conducted its analysis of the most important factor—whether any judgment would be paid from the state's treasury—on too particular a level. The Ninth Circuit had thought it important that "[t]he Contract makes clear that the Department, and not the State of California, is liable for any judgment rendered against the University" on the plaintiff's particular claim. *Doe*, 65 F.3d at 774. The Supreme Court disagreed, writing "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." *Doe*, 519 U.S. at 904.

The issue is also unsettled in the Fifth Circuit. Plaintiff asserts that the six-factor agency immunity test in *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999), should be used to determine whether an agency deserves immunity for the particular

9

function at issue. But which test to use is relevant only if the Fifth Circuit allows agencies to be arms of the state for some purposes and not for others. *Hudson* does not answer that question, because the opinion does not suggest that the Orleans Parish District Attorney's Office can be an arm of the state for some purposes but not for others.

Neither does *Southwestern Bell Telephone Co. v. City of El Paso*, 243 F.3d 936 (5th Cir. 2001), provide an answer. Although the court noted in passing the need to "review the relationship between the state and entity in question, examining the essential nature of the proceeding," it did not discuss the nature, particular or otherwise, of the proceeding at issue and did not hold that the agency, a water improvement district, was an arm of the state for some purposes and not others. *Id.* at 938. It held only that a prior case classifying water improvement districts as arms of the state was wrongly decided. *Id.* at 939–40.[27] Plaintiff's citation to *Pace v. Bogalusa City School Board*, 403 F.3d 272 (5th Cir. 2003) (en banc), is even more unilluminating. That case was decided on waiver grounds. *Id.* at 280, 284.

As the parties have not cited a Fifth Circuit case that resolves whether courts should conduct the *Hudson* analysis on a categorical or particular-function level, the Court is left to guess. On the one hand, the Fifth Circuit's repeated references to "the particular *entity* at issue," *Southwestern Bell*, 243 F.3d at 938 (quoting *McDonald v. Bd. of Miss. Levee Comm'rs*, 832 F.2d 901, 908 (5th Cir. 1987)) (emphasis added), when conducting arm-of-

---

[27] The Court did go on to say that some state agencies may be immune while others not, even if the state legislature enacted all of the agencies under the same state constitutional power. *Id.* at 940 (water improvement districts not same as ports for purposes of sovereign immunity even though both species of agency were enacted under Article XVI, § 59 of the Texas Constitution). That comes nowhere close to suggesting that the same agency may sometimes be immune and sometimes not.

10

the-state analyses suggest that the court might adopt a categorical approach and hold that a state agency is either immune as a whole or not. On the other hand, a categorical holding would be difficult to square with cases like *McMillian v. Monroe County*, 520 U.S. 781 (1997), which hold that officials such as sheriffs may sometimes be agents of the state and sometimes agents of a municipality for purposes of Section 1983.[28]

The Court need not resolve this issue, however, because even looking to the particular function of the Defendants in this case—administering the RSD—they are arms of the state.[29] The six factors the Fifth Circuit uses to analyze this question are: (1) "Whether the state statutes and case law view the agency as an arm of the state"; (2) "The source of the entity's funding"; (3) "The entity's degree of local autonomy"; (4) "Whether the entity is concerned primarily with local as opposed to statewide problems"; (5) "Whether the entity has the authority to sue and be sued in its own name"; and (6) "Whether the entity has the right to hold and use property." *Hudson*, 174 F.3d at 679.

"A defendant need not possess each of the above attributes to benefit from the Eleventh Amendment. Nor are these factors necessarily equal to one another." *Id.* at 681–82. Courts "typically deal with the last two factors in a fairly brief fashion," and "it is well established that the second is the most important." *Id.* at 681; *Hess v. Port Auth.*

---

[28] Difficult, but not impossible. A court could hold that a person may wear two hats more easily than an agency, because a person may act on behalf of multiple agencies.

[29] The Louisiana Legislature established the RSD in 2003 to respond to the problem of "academically unacceptable" schools that fail "to provide an appropriate education for children attending any public elementary or secondary school operated under the jurisdiction and direction of any city, parish, or other local public school board." La. Rev. Stat. § 17:10; *id.* § 1990. It is "administered by [LDOE], subject to the approval of [BESE]." *Id.* § 1990(A)(2).

*Trans-Hudson Corp.*, 513 U.S. 30, 49 ("[T]he vast majority of Circuits . . . have concluded that the state treasury factor is the most important factor to be considered . . . and, in practice, have generally accorded this factor dispositive weight." (internal quotation marks omitted)). The second factor, though sometimes phrased as concerning the *source* of an agency's funding, actually asks "whether a judgment against it will be paid with state funds." *Hudson*, 174 F.3d at 686; *see Southwestern Bell*, 243 F.3d at 938 (explaining question is "whether a money judgment against the instrumentality would be enforceable against the state.").

In light of the statutory scheme Louisiana has used to implement the RSD, the least important *Hudson* factors (the fifth and sixth), weigh in favor of finding that Defendants are not arms of the state; the LDOE and BESE are juridical bodies, and they are entitled to hold and use property. *See* La. Rev. Stat. § 17:1; *id.* § 17:1990; *id.* § 36:642. There is no direct evidence available on the first *Hudson* factor, as no state statute or case law addresses whether the LDOE and BESE are arms of the state when administering the RSD. But state law is clear that the RSD is not juridically separate from the LDOE and BESE and that it is subordinate to their control. *Tankerson v. Vallas*, 34 So. 3d 355, 358 (La. Ct. App. 2010) ("The statute authorizing the RSD contains no equivalent language [to the language making a parish school board a body corporate]; to the contrary, the RSD is an 'intermediate educational unit,' which 'shall be administered by the state' DOE with the approval of BESE."). This suggests, if not conclusively, that the state views the RSD as an arm of itself.

The fourth *Hudson* factor cuts both ways. It is true, as Plaintiff suggests, that the operation of primary and secondary schools is often a matter of local as opposed to

12

statewide concern. But education of all varieties is also a matter of concern to the state, which the Louisiana Constitution requires to "provide for the education of the people" by "establish[ing] and maintain[ing] a public educational system." La. Const. art. VII, § 1. For example, BESE has the responsibility "to determine the cost of a minimum foundation program of education in all public elementary and second schools" and "to equitably allocate" funds pooled from every city and school system in the state to ensure that all schools have the funds necessary to function properly. *Id.* art. VII, § 13(B). In any event, the entire purpose of the RSD is to remove schools from local control when local control has failed. If the "problem," to use *Hudson*'s language, that concerns the RSD is simply the education of local children, that is in part a local one. If the "problem" that concerns it is the rescue and improvement of failed school districts across the state, that is a statewide one. It is not clear which, if either, problem is the RSD's predominant concern, but it is of note that the RSD operates across multiple parishes.[30]

The third *Hudson* factor—autonomy from the State—favors a finding that Defendants are arms of the state. While it is true that the statutes creating the RSD grant it "the same authority and autonomy afforded to city, parish and other local public school systems," La. Rev. Stat. § 17:900, it is the *state*, through the RSD as constituted under the LDOE and BESE, that exercises that autonomy. The purpose of the statutes therefore is

---

[30]    R. Doc. No. 43, p. 4 ("The RSD currently operates schools in five different parishes, including a total of fifteen different schools in East Baton Rouge, Caddo, Pointe Coupee, and St. Helena Parishes.") This would be a different case if the state had created an Orleans Parish RSD, a Caddo Parish RSD, and so on. Even that would not be dispositive, however, as Defendants correctly note that a state university—even one fixed to a particular locality—can be an arm of the state because university-level education is a statewide concern. *Id.* p. 5.

to vest power in the state that would otherwise be reserved to municipalities, rather than to vest power, nominally of the state, in municipal actors. This is not a case where the state has taken an officer that the state constitution classifies as a state official, such as a district attorney, and assigned him or her to a locality to perform local functions with little or no oversight from a state agency. *See Hudson*, 174 F.3d at 687. The RSD is operated by agencies of the state, which are specifically granted the right to withdraw local power from local officials. *See Williams*, 859 F. Supp. 2d at 829 ("This power structure further contrasts RSD with parish school boards, which . . . 'are autonomous political creatures,'" unlike the RSD, which "is not capable of self-administration.").

The second *Hudson* factor, and the most important one, also counsels the conclusion that Defendants are arms of the state. Plaintiff asserts that "Defendants' funding for RSD purposes is local in nature," but that is irrelevant even if true.[31] The RSD's funds, whatever their source, are presumably held by the state and so any judgment would presumably have to be satisfied from the state treasury. The Court need not presume, however. Plaintiff has not sued the RSD. He has sued the LDOE and BESE. Unless Plaintiff can argue, and he has not yet argued, that a judgment against the LDOE and BESE would not be paid from the state treasury, the second factor strongly suggests that Defendants are arms of the state.[32]

Taking all of the *Hudson* factors together, the Court concludes that LDOE and BESE should be treated as arms of the state even when they perform the particular function of administering the RSD. Accordingly, they are entitled to sovereign immunity. While

---

[31] R. Doc. No. 40, p. 9.

[32] Defendants assert that it is clear that payment of any judgment would come from the state treasury, Rec. Doc. 43, p. 5, and the Court has no reason to doubt their assertion.

14

sovereign immunity may be waived, the waiver must be express, *Edelman v. Jordan,* 415 U.S. 651, 673 (1974); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986), and "Louisiana has not waived its sovereign immunity for suits brought in federal court." *Raj v. La. State Univ.*, 714 F.3d 322, 329 (5th Cir. 2013) (quoting *Richardson v. Southern Univ.*, 118 F.3d 450, 453 (5th Cir. 1997)); *see* La. Rev. Stat. § 13:5106(A) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."). Accordingly, all of Plaintiff's state law claims, both those for damages and those for the equitable relief of reinstatement, must be dismissed. *See Pennhurst State Sch. & Hosp.*, 465 U.S. 89, 121 (1984) (holding that sovereign immunity bars state-law claims against state officials in federal court, regardless whether the relief sought is retrospective or prospective).

As for Plaintiff's federal claims, Congress may abrogate state sovereign immunity pursuant to its enforcement powers under Section 5 of the Fourteenth Amendment. *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 730-31 (2003) ("Congress may, however, abrogate such immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment."); *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)). Though Congress rarely exercises this power, it did so when enacting Title VII. *Hibbs*, 538 U.S. at 730-31 ("Congress responded to this history of discrimination by abrogating States' sovereign immunity in Title VII of the Civil Rights Act of 1964, 78 Stat. 255, 42 U.S.C. § 2000e-2(a), and we sustained this abrogation in *Fitzpatrick*."). Accordingly, Plaintiff's Title VII are not barred by sovereign immunity.

15

Congress did not abrogate states' sovereign immunity when it enacted Section 1981 and the ADEA.[33] *See Sessions v. Rusk St. Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) ("Section 1981 contains no congressional waiver of the state's eleventh amendment immunity."); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) ("[I]n the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals."). Accordingly, Plaintiff's claims for damages under Section 1981 and the ADEA must be dismissed. But Defendants' sovereign immunity cannot shield them from Plaintiff's request for the prospective, equitable relief of reinstatement under these statutes. *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) ("Congress did not have to abrogate sovereign immunity where a state employee sues a state official in his or her official capacity seeking equitable, prospective relief in the form of reinstatement . . . because the Eleventh Amendment does not act as a bar to such suits in the first instance."); *State Empl's Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) ("Every Circuit to have considered the issue, including our own, has held that claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar."); *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). Sovereign immunity is therefore no bar to Plaintiff's request for reinstatement under Section 1981 and the ADEA.

## II. Section 1981

Plaintiff's Section 1981 claim nevertheless fails because "plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under

---

[33] Plaintiff's claims under Section 1983 have already been dismissed with prejudice. R. Doc. No. 36, p. 1.

16

§ 1981." *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 463 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989)).  That is, Section 1981 does not "create[] a remedy against state actors in addition to § 1983." *Id.* at 464.  As Plaintiff has dismissed his Section 1983 claim, he cannot pursue his claim under Section 1981.[34]

### III.   Title VII and ADEA

As Plaintiff admits, his "Title VII [and] ADEA . . . claims which arose in [2008] have prescribed."[35]  All that remain, then, are his claims that:  (1) "Defendants further willfully terminated, failed to maintain and/or promote into a permanent administrative position of Assistant Principal or any other administrative position and/or forcibly retired Mr. O'Reilly from his position as Special Education teacher and Department Chair at L.B. Landry High School as a continuation of its discriminatory practices, including on the basis of rage and/or age"; and (2) "[D]efendants willfully terminated and/or forcibly retired Mr. O'Reilly in retaliation for his filed EEOC complaint."[36]

Defendants assert that Plaintiff's retaliation claim must be dismissed because, as a matter of law, too much time elapsed between Plaintiff's protected activity (filing an EEOC

---

[34]   Even had he not, the result would be the same; states are not a "person," and Section 1983 applies only to persons.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) ("[A] State is not a 'person' within the meaning of § 1983."); *see Encalarade v. New Orleans Ctr. for Creative Arts/Riverfront*, 2010 WL 2854275, at *1 (E.D. La. July 19, 2010) ("[I]f NOCCA is an arm of the State of Louisiana, Encalarde's § 1981 and § 1983 claims against NOCCA must fail." (internal quotation marks omitted)).

[35]   R. Doc. No. 27, p. 17; *see* R. Doc. No. 1, ¶ 33 (claim relating to employment at Reed High).

[36]   R. Doc. No. 1, ¶¶ 34–35.

17

complaint in 2008) and the adverse employment action (Plaintiff's 2010 termination).[37] The Court agrees. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case"—and Plaintiff has alleged no facts in his retaliation claim other than temporal proximity to support causation—"uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). A twenty-month gap is too long as a matter of law, *id.*, as is a sixteen-month gap, *Williams v. Recovery Sch. Dist.,* 859 F. Supp. 2d 824, 831 (E.D. La. 2012), and as is even a five-month gap, *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002). The twenty-five-month gap between Plaintiff's EEOC complaint and his termination is simply far too long to support an inference of causation.[38]

Defendants also assert that Plaintiff's allegations of discrimination fail the *Twombly/Iqbal* standard, claiming that "with respect to the 2010 incident [at Landry High], [Plaintiff does] not allege any specific details regarding any kind of racial or age-based animus on the part of" the administrators involved in his firing and instead "merely notes that these individuals were 'substantially younger than Mr. O'Reilly and of a differing racial and/or ethnic background,'" a fact that is clearly insufficient.[39] Defendants are only

---

[37] R. Doc. No. 38, pp. 17–19.

[38] Plaintiff cites *Haynes v. Shalala*, 902 F. Supp. 259 (D.D.C. 1995), for the proposition that causation may be inferred despite a three-year gap between the protected activity and the retaliatory act. Even if *Haynes* is still persuasive after *Breeden* in the District for the District of Columbia, it is not persuasive in this District after *Raggs*.

[39] R. Doc. No. 38, pp. 13–16. As Defendants put it, and the Court agrees: "In today's diverse society, a plaintiff cannot simply allege that he interacted with people who have different racial or ethnic [or age] backgrounds to

18

partially correct. Plaintiff also alleges that "[w]hen he requested an appeal and/or grievance proceeding, the [RSD] suggested Mr. O'Reilly should simply retire."[40] But that statement is even less evidence of age-related discrimination than the statement "I think it's time to hang it up and you—for you to retire," which the Fifth Circuit has held is insufficient under the ADEA. *Martin v. Bayland, Inc.*, 181 F. App'x 422, 423 (5th Cir. 2006) (per curiam) (unpublished) ("There is a link between retirement and age, but it is not a necessary one."); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (holding that statements such as there is "'too much grey hair' in company management" and "the Chief Executive Officer has decided to 'skip a generation' in selecting plaintiff's replacement" are not direct evidence of age-related animus).[41]

Plaintiff claims that he has alleged other facts, but his only other allegations that might satisfy the *Twombly/Iqbal* standard—that he and others "overheard [statements] regarding terminating persons of O'Reilly's racial and/or age demographic" and that "the

---

justify an employment discrimination claim." R. Doc. No. 38, p. 15; *see, e.g., Richards v. JRK Property Holdings*, 405 F. App'x 829, 831 (5th Cir. 2010) (per curiam) (unpublished) (holding that plaintiffs need more than the subjective belief they have been discriminated against).

[40] R. Doc. No. 1, ¶ 23.

[41] The statement is even less probative because the suggestion that Plaintiff simply retire was offered to resolve his grievance over a termination that had already happened, rather than as the reason for his termination. Compare two statements: "Having fired you for what we think is misconduct, we are still willing to let you retire to resolve this matter"; and "It's time for you to retire [. . . or else]." The former sounds like an offer-in-compromise, which hardly suggests animus, while the latter is at least open to the interpretation that any subsequent firing was motivated by the employee's eligibility for retirement (though the Fifth Circuit does not think even that).

individual placed in the Assistant Principal position sought by Mr. O'Reilly was a younger, African American male with substantially less experience than Mr. O'Reilly"—relate to the prescribed claims arising out of his 2008 employment with the RSD at Reed High.[42] Even assuming those statements could raise a plausible inference of discrimination in the failure to promote Plaintiff at Reed High in 2008, they are insufficient as a matter of law to raise an inference of discrimination without anything relating them to Plaintiff's termination from Landry High in 2010.[43]

## CONCLUSION

Plaintiff's claims are either barred by sovereign immunity or fail to state a claim for relief. Defendants' motion to dismiss is **GRANTED**.

**New Orleans, Louisiana, this 26th day of June, 2013.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[42] R. Doc. No. 40, p. 20.

[43] For example, involvement of the same decision-makers, allegations somehow linking the new decision-makers to the persons who made the discriminatory comments allegedly overheard by Plaintiff and others while at Reed High, allegations sufficient to plead a plausible policy or practice of the RSD, replacement at Landry High by another allegedly "objectively less qualified" person "of a different age and race," R. Doc. No. 43, p. 20, or the like. Otherwise, the events from Plaintiff's time at Reed High are neither "related" nor relevant "background evidence" sufficient to elevate his claims from the possible to the plausible. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Plaintiff's quotes from the hostile work environment portion of *Morgan*'s analysis, R. Doc. No. 40, p. 20, n. 56, are irrelevant. He brings only discrete-act claims.